## HEMPHILL *v.* SMITH.

[91 South. 237 No. 22225.]

1. GUARDIAN AND WARD. *Insane persons. Parent may not appoint testamentary guardian for adult imbecile child.*

   A parent is without power to appoint a testamentary guardian for an adult child, though such child be an imbecile.

2. WILLS. *Testamentary trust not invalidated by void provision appointing guardian for child.*

   A trust created by the will of a parent for·an imbecile child is not invalidated by a void provision therein by which the testator attempted to appoint a guardian for such child.

3. INSANE PERSONS. *Guardian's conviction sufficient to justify removal.*

   The conviction of a guardian of an imbecile child for a felony is sufficient to justify his removal as such guardian.

4. APPEAL AND ERROR. *Determination made solely on record of court below.*

   A case appealed to the supreme court must be there tried solely on the record made in the court below, and the subsequent reversal of a judgment introduced in evidence on the trial in the court below cannot be taken into consideration.

APPEAL from chancery court of Sunflower county.
HON. E. N. THOMAS, Chancellor.
Petition by George W. Smith for removal of W. T.
Hemphill as guardian of the person and estate of Sollie
Overby.   Petition granted, and Hemphill appeals.   Af-
firmed.

*Hilton & Hilton, Frank E. Everett* and *W. D. Wormack,*
for appellant.

There is but one question in this case.   What is "suf-
ficient cause," and was that cause sustained by the proof?
Section 1968, Hemingway's Code, provides: "The court
by which a guardian was appointed, may, for sufficient
cause, after having him cited to appear, etc."
This is the only statutory method of removing a guard-
ian.   I do not mean to argue that the chancery court would
not have the inherent power to remove a guardian for
misconduct in the administration of his ward's estate,
but before the court can remove him, there must be such
mismanagement of the estate or misconduct toward the
ward to constitute "sufficient cause" for removal.   .
Counsel for Geo. W. Smith, in their brief, abandon the
first ground assigned in their petition for appellant's re-
moval, that is, that he was convicted of a felony, and con-
fine themselves entirely to the ground of "cruel and in-
human treatment" of the ward.   The authorities cited in
our initial brief literally drive them from the position
that his so-called convictions would be cause for removal.
Now let's see about the charge of cruel and inhuman
treatment of the ward.   The evidence of George Smith
himself shows that he would not let Hemphill have any-
thing to do with his ward after December, 1920; he
would not let him take him to town to have clothes made
for him and it is undisputed that all his clothes had to be
made because his body was so unproportioned that you
could not buy them ready made.

Mr. Rudy an officer of the law (see pages 31-35 of the record), shows that he went with Hemphill to see Smith and he, Smith, refused to let Hemphill see his ward or to have anything whatever to do with him. To the same effect, is the evidence of Hemphill, none of which is disputed by Smith in any way. Then after Smith had given appellee the permission of having his ward clothed or seeing him, but constantly demanding his thirty dollars per month board for him, having no one about the place to cook for or look after this imbecile, who was not able to provide for the ward. Certainly that was not satisfactory to the guardian, neither was it to the best interest of the ward. It was then that the guardian accompanied by his family physician, Dr. Norman, took the ward from the custody of Smith. This constitutes the evidence showing "sufficient cause" for his removal. Solly in his evidence says Hemphill treated him alright while he was with him.

Therefore, when boiled down, the "cruel and inhuman treatment" of the ward consists, first, in taking him away from the custody of Geo. W. Smith, who was getting thirty dollars per month board for him; second, in taking him out of a place where he had no one to care for him, his clothes, his person, to cook a meal, except Geo. Smith; third, in taking him into his own care and keeping where he could provide him with the comforts and necessities of life, without paying out of Solly's little estate thirty dollars per month board; fourth, in carrying out the provisions of the will of his mother and the solemn decree of the court, but counsel says it was "cruel and inhuman treatment" to take him away from his home and his friends. Mrs. Smith, Solly's mother, knew that home and those friends, when she wrote her will in 1916 four years before her death. She knew that home and those friends during the four years that elapsed from the writing of the will up to her death, and she did not see fit to change it. She knew her boy and his condition. She knew W. T. Hemphill, whom she denominated guardian of her unfortunate

boy; she knew Geo. W. Smith, her husband, and did not want him to have the care and custody of her unfortunate child, for doubtless, she had visions then of the charge for board at the rate of one dollar per day by this stepfather, who counsel pictures as so good, kind and loving, and the early dissipation by him of the little estate she left for the support of this helpless one.

Take the record of this matter in this court, and they show Hemphill has been hounded, harrassed and pursued by Geo. W. Smith trying to oust him as guardian, since the probation of the will. The discretion of a chancellor cannot be arbitrarily used. I know he has broad powers, but he has no right or authority to remove a guardian, unless "sufficient cause" be first shown, and in this case no cause was shown at all for his removal, and we submit the decree should be reversed.

*Neil & Clark,* for appellee.

Citing only statutes which we conceive apply to and govern in this case, we will now proceed, as nearly as we are able to and in as brief manner as possible, to the heart of this case. Section 2403 of the Mississippi Code of 1906, Hemingway's Code, section 1964, in so far as it applies to this case, provides that: "The chancery court of the county of the residence of a minor who has an estate, real or personal, shall appoint a guardian for him . . . ."

Section 2432 of the Mississippi Code of 1906, Hemingway's Code, section 1993, provides that: "If someone will not qualify as guardian of a person of unsound mind, the guardianship may be devolved upon the clerk of the chancery court of the county subject to all the provision of law for his being guardian of minors."

The duties and powers of guardians other than of minors, in so far as the ward's estate is concerned, are given and clearly defined by sections 2437 and 2438, of the Mississippi Code of 1906, Hemingway's Code, sections 1998 and 1999.

As we interpret the law set out in these statutes, humanity demands and the law requires that a guardian, especially a guardian of a ward of the kind shown by this record, should first see to the comfort and welfare of the ward and then to preservation of the ward's estate, but the record in this case shows that appellant, if he has discharged any duty to his ward, has looked first to the preservation of the ward's estate, which he inherits at the death of his ward, then, in violation of law (section 2424, Mississippi Code of 1906, Hemingway's Code, section 1985, in violation of the trust imposed in him by the dead mother of his ward and in violation of all laws of humanity, recreant to duty and trust, he, the appellant, months after the death of his ward's mother, becomes so tenderly solicitous of the welfare and personal comfort of his ward that he, accompanied by six of his friends in automobile, goes to the home of his ward in Sunflower county where, after the use of force and strategy, they had gotten George Smith, stepfather of the ward and appellee herein, away from the house, appellant, tender guardian, nephew, friend and heir of his ward's mother, deaf to the cries and pleading of his ward "not to be taken from the only home he had ever known," by the use of force, takes his ward from his home and friends to a home and people in a distant county all unknown to him, the said ward.

The court, which made the order appealed from, had before it the evidence of appellant and that evidence shows, if it shows anything, such criminal neglect by appellant of his ward that the court on its own motion, would have been more than warranted in removing appellant as guardian without considering the treatment of the ward by his guardian as set out herein, and in support of this statement, we call the court's attention to appellant's cross-examination as shown at pages 101 and 102 of the record.

The law governing this case as above indicated, as far as we are able to see, is purely statutory. Parties and facts were all before the only court who had jurisdiction to act therein, and that court, on the evidence before him

saw for the best interest of the ward, to remove appellant as guardian of said ward and we contend that, if there ever was a case in which the decree of the trial court should not be disturbed, altered or changed in any way, it is the decree of the chancery court in the instant case and we submit that said decree should be affirmed.

SMITH, C. J., delivered the opinion of the court.

Sollie Overby, an adult about forty years old, was adjudged to be of unsound mind, and the appellant was appointed guardian of his person and estate. Some time thereafter Overby, by George W. Smith, his next friend, filed a petition in the court below praying for the appellant's removal as his guardian, and on final hearing the prayer of the petition was granted, and another guardian was appointed. Hemphill has appealed to this court.

It appears that in August, 1920, Angeline Smith died, leaving a will containing the following provision:

"I give and bequeath unto W. T. Hemphill, my nephew, the remainder of my entire estate including my land in Sunflower county, and all of my personal property and whatever money I may have in cash on hand at my death, the said W. T. Hemphill is to use all of this money, personal property and real estate for the use and benefit of my son Sollie Overby, during his lifetime, and to take my son Sollie Overby into his care and custody, and provide for him in every way that will be necessary for his comfort and enjoyment and provide for him all the necessaries of life that he will need and that the property which I leave will justify. This property is given to the said W. T. Hemphill in trust for the use and benefit of said Sollie Overby, during his lifetime and at his death, the remainder, if any, to go to the said W. T. Hemphill, his heirs and assigns in fee simple.

"The said W. T. Hemphill shall receive no pay for his services in the care and custody of my son and for the

handling of my estate other than he is to receive the remainder of the estate upon the death of my son Sollie."

Angeline Smith was the wife of George W. Smith and the mother of Sollie Overby by a former marriage. After the death of Mrs. Smith, Overby was adjudged to be of unsound mind, the appellant was appointed guardian of his person and estate, and by an agreement between himself and Smith, Overby was to remain with Smith, to whom an allowance would be made by the appellant for Overby's support. At the time of Mrs. Smith's death she, her husband, and Overby were living together in Sunflower county, where Smith and Overby still live. The appellant lives in Simpson county. Being of the opinion, according to his testimony, that he could better discharge the duty he owed Overby both under the will and as guardian by taking him into his own custody, and Smith being unwilling for him so to do, the appellant kidnapped Overby and carried him to Simpson county without the consent of Smith or of the chancery court, for which he was indicted, convicted and sentenced to the penitentiary. The record of this conviction was introduced in evidence without objection, from which it appears that the case was still pending on a motion for a new trial. Overby himself testified, and in so far as the record discloses was mentally competent so to do, and stated that he was content, and wanted to remain, with Smith. The appellant is a man of good character.

While this cause was pending in the supreme court the appellant's conviction for the alleged kidnapping of Overby, which had also been appealed to this court, was set aside, and the appellant was discharged.

The contention of the appellant that he is a testamentary guardian of Overby is without merit, for, conceding that Overby's mother attempted by her will to appoint him as such, a parent has the power to appoint such guardian for a minor child only. The invalidity of that provision of the will, however, will not affect the remaining provi-

sions thereof, and the devise of the property therein mentioned to the appellant in trust is valid.

The reversal of the appellant's conviction on the charge of kidnapping Overby cannot be here considered, for the cause must be disposed of on the record made in the court below. *Clark* v. *Smith,* 110 Miss. 728, 70 So. 897. This conviction was sufficient to justify the removal of the appellant; consequently it will not be necessary for us to decide whether his removal would have been justified had the record of this conviction been excluded.

One of the contentions of the appellant is that the court below was without power in this proceeding to remove him as trustee under the will of Angeline Smith, but it will be unnecessary for us to decide whether or not he could or should have been removed as such trustee in this proceeding, for the reason that his removal as such trustee is neither prayed for in the petition nor awarded by the decree removing him as guardian.

*Affirmed.*